## RIVERSIDE MILLS *v.* JONES.

<div style="float:right">121 33<br>125 676</div>

It is the duty of the master to furnish suitable instrumentalities for the due prosecution of the work for the accomplishment of which the servant is employed.

In the erection of a simple structure which does not necessarily call for the exercise of special skill, the servant may adopt any plan which is usual and customary in similar undertakings, where the master does not devise a plan.

But to render the master liable for the negligence of a fellow-servant for an injury sustained by a servant in the prosecution of a plan devised by the servants, because the fellow-servant was known by the master not to be skilled in the execution of the plan adopted, it must be alleged and proved that the plan adopted by the servant was proper and usual under the same or similar conditions.

Argued October 4,—Decided October 15, 1904.

Action for damages. Before Judge Eve. City court of Richmond county. March 12, 1904.

*E. H. Callaway* and *Bryan Cumming,* for plaintiff in error, cited *Ga. R.* 119/652; 108/199; 111/315; 102/64; 113/277; 90/492; 12 Am. & Eng. Enc. L. (2d ed.) 952–3; 20 Id.; 91 Fed. 681; 54 Ill. 397; 32 Am. St. R. 425.

*William K. Miller,* contra, cited 12 Am. & Eng. Enc. L. 918; Lab. M. & S. §§ 194–5; 91 N. Y. 497; 36 N. E. 241; 21 S. E. 342; 81 N. W. 518; 57 S. W. 913; 93 Fed. 246; 107 U. S. 454 (27 L. ed. 608); *Ga. R.* 120/1074, 230; 119/652, 705; 111/427, 820; 108/197; 113/995.

EVANS, J. The plaintiff below brought a suit against the Riverside Mills, a corporation, to recover damages for personal injuries alleged to have been sustained by him while engaged in the performance of his duties as its employee, he having been engaged by the defendant in the capacity of a carpenter. The

3

allegations of fact upon which the plaintiff relied as showing liability on the part of the defendant were set forth in paragraphs three to eleven, inclusive, of his petition, and were as follows: On October 16th, 1901, "plaintiff was engaged in the construction of a bridge about 20 feet from the ground, connecting the second stories of two buildings. It became necessary to elevate certain dressed timbers, four inches by ten inches by ten feet, from a platform about three feet from the ground, to a level with the bridge on which they were to be used as flooring. Plaintiff and W. R. Achord, an employee of defendant, ascended to the tin roof of a projection of the engine room, which was about on a level with and at one end of the bridge. This roof was about six feet by twelve feet, and sloped towards the platform from which the timbers were to be elevated. After plaintiff had ascended to the roof, one Lafayette Fuller, an employee and agent of defendant, fetched a line of defendant's from defendant's storeroom; one end of the line Fuller attached to the middle of the timber, as it stood upright; Fuller then threw the other end of the line to plaintiff and Achord, and gave the signal to haul on the line and thereby elevate the timber. From the position occupied by plaintiff he could not see the timber nor the fastening of the line thereto. When plaintiff hauled on the line, the tie attaching it to the timber gave way and slipped over the end of the timber. The sudden slacking of the line in plaintiff's hands caused him irresistibly to lose his balance, his feet slipped from under him and he fell backward from the roof and sustained the injuries" of which he complains. "That in and of itself, this was a proper, safe, and an advantageous method of elevating these timbers, provided always that the end of the line attached to the timber was made fast and secure thereto by one skilled and experienced in such work." "That this work of making fast the line to the timber requires for its safe performance one especially trained and skilled as what is technically known as a 'rigger.'" "That Fuller, who attempted to make this attachment, was not even a competent general carpenter, but was generally incompetent and was not a 'rigger;' had no experience whatever in the art of 'rigging,' knot-tying and making fast of lines to timbers for the purpose of elevating them, but that on the contrary he was utterly incompetent for the safe performance of this highly

skilled work, the difficulties and dangers of which were greatly enhanced by reason of the timbers being dressed and by reason of the necessity of its being elevated in a perpendicular position, and by reason of the position necessarily occupied by plaintiff." " That defendant knew, or by the exercise of ordinary care ought to have known, of Fuller's incompetency, and that its means of knowing of Fuller's incompetence were superior to those of plaintiff." " That plaintiff had never before worked with Fuller; that plaintiff did not know of Fuller's incompetence in the work which defendant gave him to perform; that by the exercise of ordinary care and diligence plaintiff could not have known of Fuller's incompetence; that plaintiff had not equal means with defendant of knowing of Fuller's incompetence." " That defendant was negligent in that it failed to exercise ordinary care in the selection of Fuller for the performance of the work in the performance of which plaintiff was injured; that defendant was negligent in not exercising ordinary care in ascertaining, by inquiry or otherwise, Fuller's incompetency; that defendant, though it knew, or in the exercise of ordinary care ought to have known, of Fuller's incompetency, was negligent in that it failed to warn plaintiff of the dangers incident to working with its incompetent employee." " That the incompetency of defendant's employee, Fuller, was the direct cause of plaintiff's falling and of his injuries consequent thereupon." " That in all the matters herein plaintiff was free from fault and in the exercise of ordinary care and diligence, and his means of knowing of the incompetence of defendant's employee, Fuller, were not equal to those of defendant." To this petition the defendant filed a general demurrer, which was overruled, and it excepts to the judgment overruling its demurrer.

The master is bound to furnish his servants with suitable instrumentalities for the performance of the work in which they are engaged. A failure to furnish suitable appliances will justify a servant in availing himself of such necessary means to accomplish the result as are usual and customary. Instrumentalities which are usually employed will, in the absence of any means at all furnished by the master, be considered those contemplated by the master. If such instrumentalities require any particular skill in their use, the master is bound to exercise reasonable prudence in the selection of workmen competent to use such in the master's

work. And if, in the use of a customary appliance, an injury occurs because of the negligence of an incompetent coservant, whose incompetency was or ought to have been known to the master, and the injured servant was without fault and did not know or have equal opportunities with the master for knowing of his fellow-servant's incompetency, the master will be liable. The master has the right to select the instrumentalities and to formulate the plan of work. But when he fails in this regard, the servant may adopt the usual and customary mode of executing the work, and may employ the usual and customary appliances; and in such event his act of selection will be that of the master. See, in this connection, the opinion delivered by Mr. Justice Atkinson in the case of *Blackman* v. *Thomson-Houston Electric Co.*, 102 *Ga.* 64, 70–71, wherein he discusses somewhat at length the law bearing upon this subject. In the petition now before us there is no allegation that the master selected the hoisting apparatus therein described, or that the same was usual and customary, or proper to be used by workmen other than those skilled in its use. The allegation is, that the method or plan employed in hoisting the timbers was "a proper, safe and an advantageous method of elevating these timbers, provided always that the end of the line attached to the timber was made fast and secure thereto by one skilled and experienced in such work," and that "this work of making fast the line to the timber requires for its safe performance one especially trained and skilled as what is technically known as a 'rigger.'" Nowhere is it alleged that the master designated this plan of elevating the timbers, or even contemplated that its servants, who were employed merely as carpenters, should adopt a method of doing the work which requires the services of a skilled workman technically known as a "rigger." Nor is it alleged that Fuller was employed as a "rigger," or that it is usual and customary for carpenters to pursue the method adopted by the plaintiff and his coemployees of hoisting timbers, when not instructed by the master to carry on the work in a different manner. What may be proper under some circumstances may be dangerous under other conditions; a plan which may be safely pursued with a certain class of labor may be highly hazardous when undertaken by a class of labor less skilled. To make the master liable, he must have expressly or impliedly authorized his

employees to pursue the plan of doing the work which they have undertaken to carry into effect. If they themselves select a plan which is not usual and customary, the master can not properly be deemed to have impliedly assented thereto, merely because he did not expressly forbid it or himself select a different plan and direct them to pursue it. That is to say, when servants are left free by their master to select the method of doing an ordinary task not necessarily requiring unusual skill and training, they have no right to presume that he contemplates their adopting a plan which is not customarily employed by workmen of their skill and experience, notwithstanding such plan may be safely pursued and is ordinarily adopted by a class of workmen whose special training fits them for its safe and successful accomplishment.

The only fair inference from the pleadings of the plaintiff, which are to be taken most strongly against him, is that he and his fellow-servants selected the plan of work adopted by them, that this plan could not be successfully or safely pursued without the services of an expert workman, technically known as a "rigger," and that in the execution of this plan the plaintiff was injured solely because Fuller, his fellow-servant, was not competent to perform the work of such an expert workman. This fellow-servant may have been incompetent to securely tie the rope to smooth timbers, yet the master was not bound to furnish a competent "rigger," unless the master devised the plan adopted of hoisting the timbers, or this plan was the usual and customary method followed by carpenters of ordinary skill and experience. There is no intimation in the petition that the master held Fuller out to be anything more than a competent carpenter. Not only does the plaintiff fail to allege that "the art of 'rigging'" is one in which an ordinary workman following the calling of a carpenter is skilled, but he is careful to state that "this work of making fast the line to the timber requires for its safe performance one especially trained and skilled as what is technically known as a 'rigger.'" The plaintiff does allege, it is true, that Fuller "was not even a competent carpenter, but was generally incompetent and was not a "rigger," but it is clear, from the allegations of the petition, that the injury was caused, not for the reason that he was "not even a competent carpenter," but from the fact that he "had no experience whatever in the art of 'rigging'" and in-

securely fastened the rope to the timber which he and his coservants were attempting to hoist. Although Fuller may have "fetched a line of defendant's from defendant's storeroom" and undertaken to perform a service for which he was unfitted, the mere fact that he did so can not affect the question as to his master's liability; for the latter did not furnish this rope to its servants with any invitation, express or implied, to use it in hoisting the timbers, nor did the master anything to induce the plaintiff to believe that if this method of elevating the timbers was adopted, Fuller was competent to discharge the duties of a "rigger.' In nothing Fuller did was he the representative of his master, it being conceded that he and the plaintiff were fellow-servants. The petition failing to allege the master's selection of the plan of work adopted, or that the same was usual and reasonably safe under the circumstances, a necessary element of liability on the part of the master was omitted, and the court below should have sustained the general demurrer.

*Judgment reversed.* All the Justices concur, except Lamar, J., disqualified.