*J. S. James,* for plaintiff.  *T. O. Hathcock,* for defendant.

---

## KNOWLES *v.* CHURCHILL.

1. Where a master provides safe machinery and appliances for lowering cotton into the hold of a vessel, and stations a hatch-tender at the hatchway, and the hatch-tender neglects to warn a fellow servant in the hold of the vessel of impending danger, whereby the latter receives personal injuries, for which he sues the master for damages, such negligence of the hatch-tender is the negligence of a fellow servant; and the injured servant can not recover damages from the master for the injury received, unless the master has called the hatch-tender away.

2. The decision in the case of *Ocean Steamship Co.* v. *Cheeney,* 86 *Ga.* 278 (12 S. E. 351), and subsequent decisions of this court holding to the same effect, are reviewed and reaffirmed.

APRIL 11, 1912.

Action for damages. Before Judge Charlton. Chatham superior court. April 28, 1911.

Robert Knowles brought suit against A. F. Churchill, and alleged

substantially as follows: On the 12th day of January, 1911, he was employed by the defendant as a laborer on the steamship "St. Bede." The vessel was being loaded with cotton, and Knowles was working in the hold of the ship, where he caught the bales as they were lowered and placed them in the proper place in the hold for stowage. The method employed was to hoist the cotton two bales at a time from the lighter, by means of a swinging beam or derrick, and then lower the cotton into the hold of the vessel where it was stowed. The cotton was hoisted by means of a winch-engine, and the cotton was grabbed by a pair of hooks which should be imbedded into the cotton in order to take a firm hold and prevent it from slipping from the hooks while being hoisted and lowered. There was a platform or staging erected at the coaming of the hatch, upon which the cotton is permitted to rest, after being brought from the lighter, and it should be inspected to see that the hooks are properly caught before the cotton is lowered into the hold of the vessel. It was necessary and customary for a hatch-tender or other person to be stationed at the hatch opening, whose duty it was to signal the men in the hold below to stand clear, which means to get out of the way when the cotton is being lowered from above. On January 13, 1911, while the plaintiff was working in the lower hold of the steamship, his duties required him to be beneath the opening for the purpose of seizing bales of cotton to be stowed, and while thus engaged, there being no signal or warning from above to stand clear, or any notice whatever that bales of cotton were about to be lowered, a bale of cotton fell from above and struck the plaintiff on his left shoulder, breaking the shoulder blade and otherwise severely injuring, bruising, and spraining his back, neck, chest, and arms. The bale which struck him was one of the two being lowered into the hold, and was not securely and substantially held by the hooks; and by reason thereof it fell and injured the plaintiff as above stated. He alleges negligence against the defendant as follows: (*a*) In not properly fastening the hooks in the cotton. (*b*) In not properly inspecting the hooks before the cotton was lowered, to determine if they were properly imbedded. (*c*) In not giving the signal or warning that cotton was being lowered.

To this petition the defendant filed general and special demurrers. The court passed an order sustaining the general demurrer, and

overruling some and sustaining some of the grounds of special demurrer. To the order sustaining the general demurrer the plaintiff excepted.

*Twiggs & Gazan,* for plaintiff.

*Osborne & Lawrence,* for defendant.

HILL, J. (After stating the foregoing facts.)  The court did not err in sustaining the general demurrer in this case.  Under the former rulings of this court upon the general question here involved, where the master provides a hatch-tender and stations him at the hatchway, and provides safe machinery and appliances for the lowering of cotton into the hold of a vessel, his duty has been fulfilled.  And if, under these circumstances, the hatch-tender neglects to give warning in order to prevent injury to a fellow servant in the hold of the vessel, such negligence is the negligence of a fellow servant, and the injured servant can not recover damages unless the master has called the hatch-tender away.  In the case of *Ocean Steamship Co.* v. *Cheeney,* supra, this court held: "A steamship company is not liable in damages for an injury to its laborer employed in stowing cotton in the hold of its vessel, by a bale of cotton thrown down the hatchway, where the injury is caused by the failure of the hatch-tender (who is usually the engine-driver or is taken indifferently from the laborers employed in loading the vessel) to give warning of the approach of the falling bale, whether it be thrown when the hatch-tender is present and fails to give the warning, or, while he is absent, it be thrown without notice by another servant engaged in the same business.  In either case the injury is occasioned by the negligence of a fellow servant." *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (70 S. E. 792).  See note to case of Ledford *v.* Los Angeles Electric Co., and numerous cases there cited sustaining the above rule, 54 L. R. A. (1902), 120, 121; Herman *v.* Port Blakely Mill Co., 71 Fed. 853; Kennedy *v.* Allentown Foundry & Machine Works, 49 App. Div. 78 (63 N. Y. Supp. 195).  See also *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 726 (19 S. E. 33, 44 Am. St. R. 113).

Our court seems to have adopted the common-law rule, which is to the effect that a master is not liable for injuries to a servant by the negligence of a fellow servant employed in the same general business, where the master has furnished proper means for carrying on the work, and has used due care in the selection of servants.  26

Cyc. 1276, 1293, and Georgia cases therein cited. See, in this connection, *Riverside Mills* v. *Jones,* 121 *Ga.* 33 (48 S. E. 700).

But it is insisted by counsel for the plaintiff that the decisions of this court holding to the above effect are unsound in principle; and they ask us to review and overrule them in so far as they hold that the hatch-tender is the fellow servant of the servant in the hold of the vessel, when injury results because the hatch-tender, in the discharge of a personal duty of the master, voluntarily absents himself, or neglects to perform his duty. It is further contended that if the master selects a servant to take his place, and that servant neglects the duty imposed, the consequence of such neglect is attributable to the failure on the part of the master to perform a personal duty, which is a condition precedent to making the place of work safe. To this contention and the deductions sought to be drawn from it we can not agree. The real question to be considered is, what is the duty of the master? Plaintiff says, to stand there and warn the servants in the hold below. But this can not be the true rule. Whenever the master has provided safe machinery and appliances and placed a competent hatch-tender at the hatchway, the measure of his duty has been fulfilled. In the very nature of things the master can not always be there in person. His duty is to provide the servant a safe place to work, and safe machinery and appliances, and a hatch-tender. If there is danger incident to the work, and the danger is not patent, it is the duty of the master to warn the servant. But there is no contention here that the danger was not patent that if the servant did not get out of the way of insecurely fastened cotton he would be hurt. Nor is there any contention that the appliances furnished by the master were not safe. The non-delegable duty of the master is to provide a hatch-tender, and, relatively to the plaintiff, he must provide safe appliances; but it is not the duty of the master to stand there in person and see that there is no negligence. If he provides a competent man as hatch-tender, and all the necessary and safe appliances for carrying on the work, that is all that can reasonably be expected of him. It would be unreasonable indeed to either require him to remain there in person, or to hold him responsible for the acts of negligence of one whom he has exercised reasonable care in selecting as a competent workman to labor with the plaintiff. There is no indication that the master failed in any of these obliga-

tions. Some of the reasons which support the rule here adhered to are that servants take the risk of the employment upon which they enter, and that public policy requires that fellow servants should each be the observer of the conduct of the others. The underlying principle of the duty of the master to provide a competent hatch-tender is upheld by our own courts and by outside authority. There is no insistence that the master in this case did not do this. From what has been said it follows that the negligence in this case is the negligence of a fellow servant, and not of the master; and this being so, the court below correctly held that there could be no recovery on the case as made by the pleadings.

We have reviewed the decisions of this court as requested by counsel for plaintiff in error, and decline to overrule, but reaffirm them.          *Judgment affirmed. All the Justices concur.*