### CROSBY v. LEHIGH VALLEY R. CO.

(Circuit Court of Appeals, Second Circuit. April 27, 1905.)

No. 172.

1. MASTER AND SERVANT—INJURIES TO SERVANTS—RAILROADS—FELLOW SERVANTS.

A fireman on a railroad passenger engine is a fellow servant with the conductor of a passenger train approaching from the opposite direction, for whose negligence, resulting in the fireman's death in a head-on collision, the railroad company was not liable.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 507.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. SAME—EMPLOYER'S LIABILITY ACT—PERSONS ENGAGED IN SUPERINTENDENCE.

Laws N. Y. 1902, p. 1749, c. 600, provides that an employé, his executor or administrator, shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of nor in the service of the employer nor engaged in his work, where personal injury is caused to the employé by reason of the negligence of any person in the employer's service intrusted with or exercising superintendence, or, in the absence of such superintendent. of any person acting as superintendent with the authority and consent of the employer. *Held*, that where the rules of a railroad company provided that a train must be governed strictly by the terms of orders addressed to it which, once in effect, so continued until fulfilled, superseded, or annulled, and a railroad conductor received and violated an order from his train dispatcher, which violation resulted in a collision in which the fireman of the opposite train was killed. such conductor was not then "acting as superintendent in the absence of the railroad company's superintendent," within the statute, so as to render the latter liable for the fireman's death.

In Error to the Circuit Court of the United States for the Western District of New York.

See 123 Fed. 193.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Western District of New York, upon a verdict directed in favor of defendant in error, who was defendant below. The action was brought to recover damages for the death of Peter W. Putnam, fireman on a passenger train of the defendant, who was killed in a head-on collision with another passenger train near Rochester, N. Y.

Frank Gibbons, for plaintiff in error.

James McCormick Mitchell, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. There is no conflict of evidence, the facts in the case having been stipulated. The complaint alleged that the accident was caused solely by the negligence of one De Lavergne, conductor of the train with which Putnam's train collided, who, "as such conductor, and in the absence of the superintendent of said railroad line, was acting as superintendent, with the authority and consent of the defendant, of a certain train of cars"; and that he was negligent "while acting as such superintendent."

. The railroad of defendant from Rochester to Honeoye Falls was operated as a single-track road, having at the Rochester terminus, and at certain other points on the road, switches and sidings to permit trains to pass each other in safety. The movement of trains was in general regulated by the time-table, but, when occasion required a departure from the time-table, the character and extent of such departure was regulated by telegraphic orders. Such orders for the movement of trains on the division where the accident happened were issued by the train dispatcher from the transmitter's office at the city of Buffalo under the authority of the superintendent of that division, whose office was located at Buffalo. On the day in question De Lavergne was conductor, and Connelly engineman, of passenger train No. 656, scheduled on the time-table to leave the station at Rochester (east-bound) at 6:30 p. m. Another passenger train, No. 665, was scheduled on the time-table to leave Honeoye Falls for Rochester at 5:53 p. m. At 6 p. m. the train dispatcher issued a "31" telegraphic train order from his office in Buffalo, which directed No. 665 to proceed to Rochester station without stopping upon the side track to allow train 656 to pass it, and directed the latter train to remain at Rochester station, and not depart therefrom until after the arrival thereat of train No. 665. This order was duly transmitted to Rochester, and copies duly delivered both to the conductor and engineman of train 656 at 6:19 p. m. By the rules a train "must be governed strictly by the terms of orders addressed to it and must not assume rights not conferred by such orders," which "once in effect continue so until fulfilled, superseded or annulled." The same order was also duly transmitted to another station on said line, known as "Rochester Junction," and there duly delivered to the conductor and engineman of train 665 at 6:14 p. m. Train 656 left Rochester station at 6:30 p. m., prior to the arrival of train 665. Said train was started by conductor De Lavergne giving a hand signal to start to the fireman, who communicated such signal to the engineman, Connelly, who thereupon started his engine. No train order, other than the one heretofore specified, was issued or given to either said conductor or engineman, subsequent to its issuance and delivery to both of them; each of them, at the time the train was started,

had in his possession his respective copy of said order, and the action of both in starting the train was an inexcusable violation of the rules, and, concededly, negligence. As a result of such negligence the train collided, about a mile east of Rochester station, with train 665, without any fault on the part of the conductor or engineer of the latter train.

It is manifest from this statement of facts that plaintiff could not recover in the federal courts on general principles of law. The case of C., M. & St. P. Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, is substantially overruled by N. E. R. Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. It had been already shorn of its authority by N. P. Railroad v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Central R. R. of N. J. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; and Oakes v. Mase, 165 U. S. 363, 17 Sup. Ct. 345, 41 L. Ed. 746. The same court (dividing five to four) has gone still further in Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006; but even without this last authority it is now settled law in the federal courts that conductor, engineer, and brakemen must be deemed to have been fellow servants. The law is the same in New York. Wooden v. West N. Y. & P. R. R., 147 N. Y. 508, 42 N. E. 199. The plaintiff's sole reliance is the employer's liability act of the state of New York (Laws 1902, p. 1749, c. 600). It provides that "the employé [or executor, or administrator] shall have the same right of compensation and remedies against the employer as if the employé had not been an employé of, nor in the service of the employer, nor engaged in his work," "where * * * personal injury is caused to an employé * * * by reason of the negligence of any person in the service of the employer, entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence, or in the absence of such superintendent, of any person acting as superintendent with the authority and consent of such employer."

The sole question presented here is whether the conductor was a person "entrusted with and exercising superintendence, whose sole or principal duty is that of superintendence"? or, if he was not generally such a superintendent, was he on the particular occasion, "in the absence of such superintendent, acting as superintendent with the authority and consent of the employer"? The New York statute is modeled generally upon the English employer's liability act, but differs from it in one important particular. Besides provisions for the negligence of any person who has any superintendence intrusted to him, the protection of the English act is extended to employés injured by reason of the "negligence of any person in the service of the employer who has the charge or control of any signal, points, locomotive-engine or train upon a railway." A similar clause is found in the employer's liability acts in Massachusetts, Alabama, Indiana, and Colorado. Reno's Employer's Liability Acts, Appendix. The New York act contains no such clause. It is stated in defendant's brief that such a clause was in the original bill, but was struck out before passage.

However that may be, the failure to include it, although in many other respects the English and Massachusetts acts were used as models, is suggestive; and the decisions in other states as to liability for the negligence of conductors under statutes which include the clause are unpersuasive to a construction of the New York act, so far as it applies to the operation of railroads. The only authority in this state to which our attention has been called bearing upon this branch of the case is McHugh v. Manhattan Ry. Co., 179 N. Y. 378, 72 N. E. 312, where a train dispatcher or yardmaster negligently directed the starting of the train while deceased was in a position of danger. The train dispatcher had charge of the yard and the sidings at stations where trains are made up, the movement of trains therein, and of the yard force employed at those points, and enginemen were directed to obey his orders in regard to shifting and making up trains and starting from terminals. The case was complicated by the circumstance that the train dispatcher, Coleman, had momentarily (as he had a right to do under the rules) turned over his work to his telegraph operator, Flanagan. The court held that, except for the statute, defendant would not have been liable for the negligence of either Coleman or Flanagan; and that Flanagan was acting as substitute with defendant's authority or consent. Defendant conceded that Coleman was a superintendent within the terms of the statue, but contended that the particular duty of seeing that the coupling was made and the coupler in safety was not in the nature of superintendence, but merely a detail of the work. Of this contention the court says:

"Doubtless, had the train been started by the engineer without a signal, or had the conductor or one of the guards improperly given a signal for the train to move, it would have been the act of a fellow servant, and the defendant would not have been liable therefor. But it does not follow that the act of a train dispatcher in sending out the train is to be regarded in the same light or as of the same character."

And they held the employer liable. This opinion is not particularly illuminative of the question presented on this appeal, although the above quotation seems to indicate that the court were not inclined to put train dispatchers and conductors in the same category. The cause of the accident in the case at bar was the failure so to regulate the movement of trains on that division as to avoid collision. The person who was intrusted with that superintendence was the train dispatcher at Buffalo. Whatever may have been the power and duties of the conductor relative to running his train—and the rules which were put in evidence show them to be what are ordinarily understood to be such duties—he was, under the circumstances here shown, when the time-table had been suspended by a "31" order, wholly without any discretion or initiative as to starting, without even any power himself to start the train, for the rule required the engineman with such an order in his pocket to disobey the conductor's signal to start, should the latter undertake to give one. Plaintiff, no doubt appreciating this difficulty, contends that the conductor was a "person acting as superintendent" with the authority and consent of the employer, in

the absence of the superintendent. That is the theory of the complaint; see quotation therefrom, supra. The argument is:

"Now, if it be assumed that the division superintendent would be the person whose sole or principal duty is that of superintendence, it must be admitted that he was absent at the time of the accident. He gave certain orders which the conductor had to carry out. The superintendent cannot be personally present on each train. He is but one man, and the railroad company has many trains. He must therefore, in his absence, intrust some person with his authority on each train. Under the rules of the company, that person is the conductor."

The rules of the company warrant no such conclusion. The authority of the superintendent empowers him to say when the time-table shall be modified, and when a "31" order stopping a train shall be suspended or annulled. No such authority is conferred by the rules on any conductor whose train has been stopped by a "31" order; he must wait, obedient to the order, without initiative or discretion, until the superintendent, or whoever else may be acting as superintendent, shall suspend or annul it. Moreover, we cannot assent to the proposition that the division superintendent was "absent at the time of the accident." Upon the plaintiff's theory that he must be actually within sight of each train, he would always be absent when performing his duties. He sits in his Buffalo office, where he is constantly advised by telegraph of the movements of all trains on his division. Every delay in the advance of a train from point to point, every interference with freedom of movement through some accident, every departure of existing positions of trains at any moment from those which the time-table indicates they should occupy, every derangement of relative movements on the whole or a part of the division due to the introduction of unscheduled trains, is displayed before him, and, as the rules indicate, he is the one to exercise discretion as to the modifications which every varying situation requires in order to insure safety. Moreover, his directions and orders are transmitted by the telegraph to every station or train which it may be necessary to instruct, and, when received, his orders are made controlling upon those to whom the actual operation of the train is confided. His mind is present though his body be absent, and it makes no difference whether his order is handed to them by a telegraph operator at some particular station or by himself. We approve the contention of the defendant that the train dispatcher or division superintendent was legally and constructively present by virtue of his orders, which were duly transmitted and duly delivered to conductor and engineman in charge of the train, inasmuch as, under defendant's rules, the said operatives were under an absolute obligation to carry out these orders.

The judgment is affirmed.