### McDONNELL v. OCEANIC STEAM NAVIGATION CO., Limited.

(Circuit Court of Appeals, Second Circuit. January 5, 1906.)

No. 71.

1. MASTER AND SERVANT—DEATH OF LONGSHOREMAN—DEFECTIVE HATCH COVERING—FELLOW SERVANTS—NEGLIGENCE.

Deceased, a longshoreman, was killed by being precipitated into the hold of a vessel by the falling of a hatch cover. He had been working with a gang for several days unloading and loading the vessel; the practice being for the gang to cover the hatch at night and uncover it again in the morning. The night before the accident the cover that fell had been placed by new men. The next morning, while deceased was in the act of removing the adjoining cover, he placed his entire weight on the cover in question, which caused it to fall. There was no inherent defect or improper construction in the cover, except that it was about two inches shorter than the space between the beam and the coaming, which was an ordinary condition compensated for by the use of wedges which had not been inserted the night before. *Held*, that the

negligence, if any, was that of deceased's fellow servants in setting the cover without wedging it, for which there could be no recovery.

2. SAME—EMPLOYERS' LIABILITY ACT.

There being no pretense that the hatch cover fell by the negligence of an employé of defendant intrusted with and exercising superintendence, or that the accident was attributable to the defect which arose from, or had not been discovered or remedied owing to defendant's negligence, there could be no recovery, under the New York employers' liability act (Laws 1902, p. 1784, c. 600) making an employer liable for injuries to a servant by the negligence of his superintendent or foreman.

8. SAME—RES IPSA LOQUITUR.

Where a longshoreman was precipitated into the hold of a vessel and killed through the negligence of his fellow servants in failing to properly set a hatch cover the night before, the mere happening of the accident was insufficient to establish negligence on the part of the master under the doctrine of res ipsa loquitur.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 881.]

4. SAME—INJURIES TO SERVANT—CARE REQUIRED.

A master is only required to use reasonable care in providing suitable instrumentalities for the use of his servants.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 173.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Alexander, Watriss & Polk, for plaintiff in error.

Henry Galbraith Ward, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The facts are plain, simple and undisputed. The plaintiff's intestate, a longshoreman who for six years had been in the employ of the defendant, was killed by falling through a hatch on the defendant's steamship Victorian because one of the covers (No. 6) on which he stepped gave way and precipitated him into the hold.

The hatch opening in question is about sixteen feet long and ten feet wide, surrounded by an iron coaming, one foot in height. An athwartship beam divides this opening in the middle, which is again divided by fore and aft beams, one end of these beams resting on the athwartship beam and the other resting in a groove on the coaming. The fore and aft beams and the coamings are provided with flanges about two inches wide to support the hatch covers, which are boards five feet long, two feet wide, and two inches thick, having rings near diagonally opposite corners to assist the stevedores in handling them. These covers are numbered so that there is no difficulty in ascertaining the proper place for each.

The Victorian arrived at New York on Wednesday, October 28, 1903. The accident happened on Monday morning following. During the intervening time, with the exception of Sunday when no work was done, the deceased was a member of a gang of six who opened the hatch in question and continued to work there, covering it at night and uncovering it in the morning. On Saturday, when the work of load-

143 F.—31

ing began, additional men were needed and six other co-employés of the deceased joined his gang, so that on that night the hatch coverings were placed in position by the entire force of twelve men instead of six men as theretofore, the particular cover which fell being handled by the new men.

At the time of the accident on Monday morning only the original six men were present. While in the act of removing cover No. 7 the deceased placed his entire weight on No. 6 and walked a couple of paces on that cover when the port end fell, causing his death as before stated. This cover was marked by his working mate but it was not seen by any of the witnesses thereafter. There is no pretense that it broke or gave way through any inherent defect or improper construction except that counsel for defendant conceded at the argument that it was about two inches shorter than the space between the beam and the coaming. It appears, however, that this is an ordinary condition which is compensated for by the use of chocks or wedges to hold the cover snugly in place.

Upon these facts we are of the opinion that no recovery can be had against the defendant. If negligence be shown at all it was that of the deceased or of a fellow servant engaged in the same general employment.

We are unable to see that the employers' liability act of New York (chapter 600, p. 1748, Laws 1902) is in any way applicable to the foregoing facts. So far as the present controversy is concerned the law leaves the relations of master and servant very much as they were prior to its passage, except that it imposes an additional liability on the master by making him responsible for the negligence of his superintendent or foreman. Hayward v. Key (C. C. A.) 138 Fed. 34; Crosby v. Lehigh Valley R. Co. (C. C. A.) 137 Fed. 765.

There can be no pretense that the hatch cover fell by reason of the negligence of an employé of the defendant intrusted with and exercising superintendence or that the accident was attributable to a defect which arose from, or had not been discovered or remedied owing to, the negligence of the defendant.

This is not a case where the doctrine of res ipsa loquitur is applicable. The defendant was not required to exercise the greatest possible care in providing suitable instrumentalities. In the case of a servant it is sufficient if the master exercises reasonable care in this respect. No defect is shown in the cover that fell or in any of its connections or supports. It had been in use on this particular hatch for at least four days and had frequently been removed and placed again in position by the deceased and his colaborers. No one, so far as the proof shows, had discovered anything unusual regarding it. The mere fact that it was placed in position on Saturday night by a longshoreman belonging to a different "gang" from intestate's gang is, of course, immaterial. The exact cause of the dropping of the cover is not shown and, probably, can never be shown. There is nothing but conjecture where proof is needed. If it be assumed that the cover was too short it does not follow that the defendant failed in its obligations to these longshoremen. It was their duty to handle the hatch covers,

to put them on and take them off, and if they did not fit tightly to wedge them in with chocks. Failure to do this cannot be imputed to the master as a fault. In other words the master provided a hatch which would have been safe enough if it had been properly handled by his employés. Upon the most favorable theory for the plaintiff it seems clear that if the cover had been properly wedged the dropping into the hold would have been impossible. It was the duty of the deceased and his fellow workmen and not of the defendant to see that this was done.

We think these views are sustained by the following authorities: Preston v. Ocean S. S. Co., 33 App. Div. 193, 53 N. Y. Supp. 444; De Graff v. N. Y. Central R. R., 76 N. Y. 125; The Elleric (D. C.) 134 Fed. 146.

It is of course unfortunate that the circumstances of the accident are such that the plaintiff is deprived of direct proof as to the manner of its occurrence, but we are not permitted for that reason to depart from the universal rule that the burden rests upon the plaintiff to prove a cause of action and that mere inferences are not substitutes for proof.

The judgment is affirmed.