## FRASER *v.* SMITH & KELLY COMPANY.

ATKINSON, J. 1. In a suit by an employee against his master to recover damages for injuries sustained in the service of the master, it was alleged, in effect, that the master had provided a safe place and appliances when properly adjusted, and that the servant was injured because of the carelessness of fellow-servants in substituting for the safe appliance furnished by the master one that was improper, and which rendered the place unsafe. *Held,* in such case the proximate cause of the injury was the negligence of the coemployees in substituting the improper appliance, and not any dereliction of duty in the master's failure in furnishing a safe place or proper appliances. Sofield *v.* Guckenheim, 64 N. J. L. 605 (46 Atl. 711, 50 L. R. A. 417) ; Quebec S. Co. *v.* Merchant, 133 U. S. 375 (10 Sup. Ct. 397, 33 L. ed. 656) ; McDonnell *v.* Oceanic S. Co. 143 Fed. 480 (74 C. C. A. 500) ; Whaley *v.* British & Foreign S. Co. 138 Fed. 379.

2. In a suit of this character, an allegation that the master knew, or ought to have known, that the plaintiff's fellow-servants had substituted an improper and inadequate appliance for that furnished by the master charges constructive and not actual notice to the master. The sufficiency of the charge of imputed notice depends upon the pleaded allegations relied upon to show it; and when such facts are insufficient to raise such an inference, the allegation is insufficient as a charge that the master had notice that the plaintiff's fellow-servants had substituted an improper appliance for that furnished by the master and thereby rendered unsafe the plaintiff's place to work. *Babcock Lumber Co.* v. *Johnson,* 120 Ga. 1030 (48 S. E. 438).

*Judgment affirmed. All the Justices concur.*

MARCH 3, 1911.

Action for damages. Before Judge Charlton. Chatham superior court. February 2, 1910.

Primus Fraser instituted suit for the recovery of damages against the Smith & Kelly Company, alleged to be a corporation. The petition was dismissed on general demurrer, and the plaintiff excepted. The following appeared, in substance, from the allegations. The defendant was engaged as a stevedore in loading a steamship with iron rails. The ship contained two compartments below the main deck for the stowing of cargoes, one denominated "between-decks," and the other the "lower-hold," which was the place in the vessel below that above mentioned. It also contained certain apertures extending through the decks, through which the ship's cargo was handled in loading and unloading, one being designated as "forward hatch," and the other "aft hatch," which were called respectively hatches numbers one and two. These hatches in the lower deck were provided with a substantial wooden cover, composed of several sections of wood, which, when properly fitted together, were firm and safe. Each of these covers was made safe by means of a support known as a "strong-back," which consisted of an iron beam provided to be placed across the hatch opening about six inches below the rim of the hatch, with each end fitted into grooves made to fit and hold it firmly. On this the sections of the cover rested, and were thus made strong and safe, and when in such position the cover formed a part of the deck upon which the employees were accustomed and required to walk and step in the discharge of their duties in receiving cargo loaded from above. Separate gangs of men were employed in loading the ship on the day before the injury. The plaintiff was a member of the gang which worked in hatch number one until twelve o'clock at night, and was ordered to return to work at six o'clock the next morning. He was then ordered to shift from work in hatch number one to hatch number two. The gang which on the previous day, while plaintiff was working at hatch number one, were engaged at hatch number two, had finished loading in the "lower-hold," and the work of storing cargo in the compartment "between-decks" was next in order. After finishing the storing of cargo in the "lower-hold" at hatch number two, the servants who had completed that work, as it was their duty to do, undertook to close the cover over hatch number two in the lower deck, so that the loading of cargo between decks might progress. In doing so they did not use the "strong-back" provided for the purpose, but instead substituted a

wooden beam or other improper appliance, and the plaintiff did not know, and could not have known by the exercise of ordinary care, that the cover was insecurely fastened, and had not equal means of such knowledge with his employer, but, in performing his duty next hereinafter mentioned, relied upon his employer to furnish him a reasonably safe place to work. In loading the cargo between decks, the rails would be suspended and lowered through the hatch. In compliance with his orders so to do, the plaintiff on the morning of the injury reported and began work at hatch number two. It was his duty to seize the rails as they were lowered through the hatch, guide them to a roller, push them to the proper place for storage in the vessel, and then release the rope or chain with which they were lowered. This duty required him to walk upon the cover of the hatch between decks, as it was immediately beneath the upper hatch through which the rails descended, and petitioner was always looking up, as the rails were coming in rapid succession. While thus engaged in receiving and placing the rails, he stepped upon the hatch cover, when a section of it became unstable and tilted, precipitating him into the lower hold for a considerable distance, causing injuries to his person. It was alleged that the injuries resulted from the negligence of the defendant, and formed the basis for the recovery of damages, the particular negligence of the defendant alleged being: "(a) In not supplying to petitioner a safe place in which to work, in that the cover to hatch #2, of the lower hold, was not securely placed thereon because the strongback was not used, but instead a wooden beam or support which enabled the sections of the cover to be jarred or slipped out of place and to fall in; said condition being known to the defendant, or in the exercise of proper care could and should have been known, as its duty to provide a safe place of work was non-delegable. (b) In failing to warn or notify petitioner of the unsafe condition of the hatch cover, which failure to warn is hereby expressly charged. (c) In failing to have a strong-back for use on said hatch, so that the same could have been safely and substantially covered; said strong-back being the requisite method of covering the hatch to insure a firm and safe covering when the sections are laid thereon. (d) In failing to use a strong-back in said hatch when the sections of the cover were placed thereon, and in the use of an appliance not intended for the purpose, and which left said hatch-cover unsafe

because of the likelihood to be jarred or pushed out of position in the work incident to loading said vessel."

*Twiggs & Gazan,* for plaintiff.

*O'Byrne, Hartridge & Wright,* for defendant.