*W. K. Fielder,* for Holland *et al.*

*John K. Davis,* contra.

---

13298, 13405. FULTON ICE AND COAL COMPANY *v.* PECE; and *vice versa.*

1. " Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Civil Code (1910), § 4420.

(*a*) This section places upon such owner or occupier of land the duty to exercise ordinary care, for the safety of his invitees, in discovering defects or dangers in the premises or instrumentalities thereon, and imposes a liability for injuries resulting from such defects as a reasonable inspection would disclose.

(*b*) Such owner or occupier of land is liable for a failure to warn his invitees of dangers or defects in such premises or instrumentalities, of which he knew or of which it was his duty to know in the exercise of ordinary care.

(*c*) Upon this principle is founded the duty which the proprietor of premises owes to a contractor's servant who comes lawfully upon the premises to repair machinery or instrumentalities thereon for the proprietor in the performance of a contract for such repairs between the proprietor and the contractor.

2. Where the servant of a contractor is lawfully upon the premises of another for the purpose of making repairs upon some instrumentality of the proprietor thereon, by virtue of a contract between his master and the proprietor, and is injured by reason of some defect of the premises or of the instrumentality thereon, an allegation, in an action by the servant against the proprietor for such injuries, that the proprietor knew of such defect, or ought to have known thereof in the exercise of ordinary care, is a sufficient allegation of knowledge to place the responsibility upon the proprietor therefor.

(*a*) Where, in such a case, the preliminary facts necessary to raise the duty of knowledge by the proprietor have been set forth, the statement of the legal conclusion that he knew or in the exercise of ordinary care ought to have known is not objectionable; otherwise where the facts alleged as to the relation do not in themselves raise such duty.

3. A servant lawfully upon the premises of another, for the purpose of making repairs upon appliances thereon for the proprietor under a contract between his master and the proprietor, does not assume the risk of defects in the appliances which are independent of those which he

is called upon to repair, and of which he could not have known in the exercise of ordinary care.

4. "Where a servant, in the regular course of his employment, is sent by the master to perform work for the latter on the premises of a third person, the obligation of the master to inspect the premises and warn the servant of dangers therein is the same as if the master was himself the owner of the premises." *Georgia Railroad* v. *Hunter*, 12 *Ga. App.* 295 (5) (77 S. E. 176).

5. "Where one suffers an injury as the result of the concurring negligence of two tort-feasors, the injured party may maintain a joint or several suit against the tort-feasors; and it will be sufficient to support a recovery in a joint suit if the negligence of both be a contributing cause, although the degree of care owed to the complainant by both parties defendant be not the same." *Gooch* v. *Georgia Marble Co.*, 151 *Ga.* 462 (107 S. E. 47); *Kelly* v. *Ga. Ry. & Power Co.*, 24 *Ga. App.* 439 (4) (101 S. E. 401).

6. Whatever may be the rule in other jurisdictions, it is the law of this State that the maxim res ipsa loquitur has no application to pleadings, and general averments of negligence can not be aided thereby; it is only a rule of evidence. *Hudgins* v. *Coca-Cola Bottling Co.*, 122 *Ga.* 695 (4) (50 S. E. 974), and cases there cited; *Cochrell* v. *Langley Mfg. Co.*, 5 *Ga. App.* 317 (63 S. E. 244); *Sinkovitz* v. *Peters Land Co.*, 5 *Ga. App.* 788 (2), 794 (64 S. E. 93).

7. Applying the foregoing principles to this case, there was no error in overruling any of the demurrers, general or special, except the special demurrer to the second count, on the ground that no specific allegations of negligence were set forth, which should have been sustained; but the court erred in sustaining any of the other special demurrers.

DECIDED FEBRUARY 10, 1923.

Action for damages; from city court of Atlanta — Judge Reid. December 5, 1921.

Application for certiorari was granted by the Supreme Court.

Gordon Pece filed a complaint for damages against the Fulton Ice and Coal Company and the Standard Gas Products Company, in four counts. The first named company will hereinafter be referred to as the Fulton Company, and the other as the Standard Company. In the first count the plaintiff alleges that on December 29, 1919, he was an employee and servant of the Standard Company as an expert welder; that the Fulton Company employed the Standard Company to weld and repair for it and upon its premises "a steel drum that had ripped open and was leaking;" that plaintiff was directed by the superintendent and vice-principal of the Standard Company, one H. A. Alber, to go to the plant of the Fulton Company and make these repairs, and to get his instructions from the Fulton Company "as to the location of the

drum, and as to how and in what particulars the same was to be welded; said Alber further stating that he would test the tank in conjunction with " one Barksdale, the vice-principal of the Fulton Company, as to the particular matter in hand, " after the work was done;" that when plaintiff reached the plant of the Fulton Company said Barksdale pointed out to plaintiff " the particular drum, stating at said time that it was in good condition except as to the ripped place " at which Barksdale instructed the plaintiff to weld the same; that he stated to plaintiff " that he (Barksdale) would in conjunction with the said Alber inspect and test said drum after the same was welded;" that the plaintiff completed the work on December 30, 1919, and so notified Barksdale and Alber, and stated that he was ready for them to inspect the drum and test the work; that the drum was a cylindrical vessel about eight feet long and four feet in circumference, made of a steel shell through which pipes ran lengthwise for the circulation of water when the drum was in use; that Barksdale and Alber, acting within the scope of their duties respectively for the companies which they represented, proceeded to test the drum by the use of air pressure therein; that the Fulton Company " rigged up a pipe and connected the said drum to its engine, through a steam gauge, obtained by it from an old steam engine, after which the said Barksdale then and there asked the said Alber if said drum would hold a heavy pressure, of approximately 200 pounds," and that, Alber replying in the affirmative, " Barksdale instructed a colored man to start the said engine;" that the drum was located in a wooden box or basin, upon the edge of which plaintiff was sitting in the view of both Barksdale and Alber at the time the test began, not having been warned by either of them of any probable danger; and when the gauge registered approximately 160 pounds, the drum suddenly exploded and seriously injured the plaintiff in described particulars.

It is alleged that the gauge was defective in that it would not register the pressure which was placed within the drum, and that this fact was well known to the defendants or should have been known to them in the exercise of ordinary care; that the same could have been easily ascertained by an inspection, and that it was the duty of the defendants, in the exercise of ordinary care, to have ascertained its condition by inspection before attempting to

use it; that the drum was defective in that the metal on the inside had worn, rusted, and corroded from exposure to water, air, and ammonia; and " that the same had left a seam within and along the inner side of said drum, which caused a thinness of the metal or steel at said point, and which condition was known to defendants, or should have been known to them in the exercise of ordinary care;" that " it was the duty of said defendants to have inspected said drum and ascertained its condition before attempting to use or test it;" that it was not safe to place a pressure of more than 75 or 80 pounds on the drum in this condition, and that the defendants should, in the exercise of ordinary care, have known this fact; that the plaintiff, under his employment, had no duty to inspect the machinery or test the work done by him, and that he did not know the defective condition of the gauge or of the drum, and was not warned of the same by any person; that he did not know what pressure a drum of this character would stand under any conditions, and did not know anything as to the manner of using a steam gauge in such a matter; that Barksdale and Alber were expert engineers and mechanics, and both did know or in the exercise of ordinary care should have known of the danger of placing heavy pressure upon this drum; that each defendant should have inspected the condiction of the metal of the drum to determine what pressure it would stand, and should have inspected the gauge to determine whether it was defective, and that ordinary diligence would have revealed by inspection the defects in this instrumentality; that the plaintiff was lawfully upon the premises of the Fulton Company about the joint business of both defendants.

By amendment it was alleged that this drum " was known as an ammonia shell brine cooler, and was an old instrument which had been in use for a long time by the defendant, and the metal making up the entire interior of said drum had become thin from corrosion when the air reached the ammonia therein, and the said drum had therein, by accumulation from its use, a certain amount of ammonia fumes and oil, all of which facts were well known to the defendant, the Fulton Ice & Coal Company, but which were unknown to this plaintiff until after the " explosion; that both failed to wash out the oil and ammonia fumes from the tank, and failed to connect any " pop valve " when applying the pressure; that Barksdale instructed the colored man to pump until the pres-

sure reached 200 pounds; that when the pressure reached 150 or 160 pounds the gauge caught and stopped registering, but that nevertheless Barksdale and the colored man continued to pump pressure into the tank until it suddenly exploded; that "when said gauge would reach a point about 150 or 160 pounds the same would catch and stop and fail to register, which facts were all unknown to the plaintiff until after the explosion occurred;" that, on account of the condition of the tank, it was dangerous to place a pressure thereon in excess of 80 pounds, which the Fulton Company knew or in the exercise of ordinary care should have known; that if the tank had been washed out before placing the air pressure thereon, the pressure would not have so suddenly increased, and the explosion would not have happened; that although the Fulton Company knew this fact or should have known the same in the exercise of ordinary care, it failed to clean out the fumes from the tank before placing the pressure thereto; that when the explosion occurred, "the tank first started to rip open on the seam where it was originally united and where the metal making up the same had become thin . . at a point about six feet away from the place that had been welded by this plaintiff, and it extended across the drum to the point by the side of the weld made by this plaintiff;" that the Fulton Company did not connect a "pop valve" with the tank, nor set the same to be released when the pressure became dangerous, to wit, 80 pounds; that if this had been done, the explosion would not have happened; that the Fulton Company knew the gauge was not correctly registering, yet continued to place pressure upon the tank until in excess of 200 pounds, when the explosion occurred.

In the petition as amended both defendants are alleged to have been negligent in failing to inspect the drum, in failing to inspect the gauge, in attempting to test the drum by the use of a defective gauge, in failing to instruct the plaintiff that the drum was weak, old, worn, and corroded, and likely to burst by reason of pressure; and in failing to warn the plaintiff of the defective condition of the gauge and of the dangers incident to the test of the drum therewith; in failing to provide a safety valve for testing a drum which was old, weak, worn, corroded, and defective, so as to prevent excessive pressure; that the Fulton Company was negligent in failing to place a "pop valve" upon the pipe and to set

the same so as to let off and relieve the pressure when it reached a dangerous point, to wit, 80 pounds or thereabouts, in failing to clean out the tank before making the test, in placing excessive pressure upon the tank so as to cause the explosion, and in not stopping the pressure when the gauge failed longer to register. There were other allegations of negligence against both the defendants, but they were not materially different from those already stated. There were additional separate allegations of negligence as to the Standard Company, but for the purposes of this case, these may also be omitted. It is alleged that the acts of negligence above recited contributed to the general result, and were the proximate and concurring cause of the explosion. The plaintiff's injuries are described and are alleged to be permanent. His earning capacity and expectancy are alleged.

The second, third and fourth counts were added by amendment. The allegations in the second count are substantially the same as those in the first count, except in the following particulars: It is alleged that Barksdale asked the plaintiff to " remain at said plant until he could test the drum to see whether or not it leaked;" that there were two holes in the tank, one for the purpose of seeing the interior and for determining whether or not oil and ammonia fumes were therein, and for the purpose of cleaning the same out; and the other hole was for the purpose of applying a " pop valve " therein to let off the pressure when it became excessive. The only allegation of negligence in this petition, however, is as follows: " Plaintiff shows to the court that the explosion was brought about by the conduct of the defendants, in making said test; that this plaintiff had no information as to the causes of said explosion, and can not set forth the specific acts of negligence of the defendants, while the defendants are fully informed of the causes of the explosion; besides, said explosion was of a kind which ordinarily would not occur, where ordinary care had been exercised by defendants; that the tank at said time, including the time of the test, was in the possession and control of the defendant Fulton Ice & Coal Company, and the test, at the time of the explosion, was being made by the defendant Fulton Ice & Coal Company and defendant Bird Wilcox Company " (Standard Gas Products Company).

The third count does not differ materially from the first count,

except as may appear in the following statement: It is alleged in the third count that Barksdale asked the plaintiff to remain; that the structure of the tank had become insecure, worn, weak, and insufficient in that the metal had become thin, and that this condition was well known to the Fulton Company, which had the possession, custody, and control there, and was well acquainted, or in the exercise of ordinary care should have been, with the facts constituting its weak condition, while the plaintiff, not having examined the same, can not describe with particularity the defects that caused the weakened condition of the drum; that the placing of a pressure of 160 pounds upon the same was dangerous in its condition; that it was not safe to place a pressure of more than 75 or 80 pounds thereon; which the Fulton Company knew or in the exercise of ordinary care should have known; that the defendants were negligent in placing high pressure upon the drum. There are no other allegations of negligence in this count.

The fourth count also followed the first count, except in respect to the maters of negligence alleged. Here it was charged that the tank had in it old disintegrating oil and ammonia fumes which had accumulated in the tank for some weeks, and which oil and fumes the defendants did not wash or clean out, and that the air pressure thereon produced the formation of a highly expansive and explosive gas which caused the tank to burst and to injure the plaintiff, " all of which facts were well known to the defendants, or should have been known in the exercise of ordinary care, and which were unknown to the plaintiff;" that the defendants were negligent in failing to wash out and clean out the oil and ammonia fumes from the tank before placing pressure thereon.

Damage was claimed in the sum of $50,000.

There was no demurrer by the Standard Company. The Fulton Company demurred to each count, upon the grounds; that no cause of action was set out against it therein; that no facts were alleged which would be sufficient to constitute a joint cause of action against the Fulton Company and the codefendant, the Standard Company; that there was an improper joinder of causes of action, in that a separate and distinct cause of action, if there was any, was alleged against each defendant; and that there was an improper joinder of parties, in that the Fulton Company, under the petition, is liable only for its own acts; and so with the Stand-

33

ard Company. All of the above-stated demurrers were overruled. The court overruled also a special demurrer of the defendant to the second count on the ground that no specific acts of negligence were set forth. Certain special demurrers to allegations of negligence in failing to inspect and in failing to warn, upon the ground that the defendant owed to the plaintiff no such duties, were sustained. The Fulton Company excepts to the judgment upon the demurrers in so far as it overruled any of them; and while this judgment overruled certain special demurrers which have not been mentioned, these need not be referred to in detail, because the company does not argue them in its brief. The plaintiff filed a cross-bill excepting to the judgment upon the demurrers in so far as it sustained any of them; but in his brief argues only those which are referred to in the following opinion.

*Anderson, Rountree & Crenshaw,* for Fulton Ice & Coal Company.

*Hewlett & Dennis,* contra.

BELL, J. (After stating the foregoing facts.)

1. In the statement of facts it was necessary to refer to both the defendant companies, and their names were simply abbreviated therein. The Standard Company filed no demurrer, and we are concerned in this opinion only with the demurrer of the Fulton Company; so that this company will hereinafter be referred to as the defendant, and the plaintiff in the court below will be called the plaintiff herein.

The petition would seem to present a case of more or less complexity, but the difficulties which would appear at the outset are to a great extent removed when once we conceive the relation existing between the plaintiff and the defendant, and the duty owing by the latter to the former. Very fortunately for the writer, this relation has been clearly determined and the duty well defined by the opinion of this court by Judge Powell in the case of *Huey* v. *Atlanta,* 8 *Ga. App.* 597 (70 S. E. 71). We could not hope to add anything worth while to what he has said in that case. Suffice it to observe that the relation is that of an owner or occupier of land and his invitee. The duty owing by the defendant to the plaintiff is founded upon that principle which is codified in section 4420 of the Civil Code (1910) as follows: "Where the owner or occupier of land, by express or implied invitation, in-

duces or leads others to come upon his premises for any lawful purpose, he is· liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Whether, under the relation which we have seen to exist, it was the duty of the defendant to inspect its premises or to warn the plaintiff of any defects therein depends upon the meaning of this section of the code, which as we understand imposes a liability not only for known defects, but for those which could have been known in the exercise of ordinary care, whether actually known or not. It is the duty of the proprietor in such a case to use ordinary care to see that his premises are. in a safe condition for those whom he invites thereon for any lawful purpose, either expressly or by implication. If he does not know the condition of his premises, it is his duty, in the exercise of ordinary care, to find out their condition, and he will be liable for such defects as a reasonable inspection would have disclosed. We think this conclusion is inevitable from the following cases in which the duty of the proprietor, herein dealt with, was involved. *Atlanta Oil Mills* v. *Coffey,* 80 *Ga.* 145 (2) (4 S. E. 759, 12 Am. St. R. 244) ; *Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607 (58 S. E. 1060) ; *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (62 S. E. 127) ; *Pacetti* v. *Central of Georgia Ry. Co.,* 6 *Ga. App.* 97 (67 S. E. 302) ; *Moone* v. *Smith,* 6 *Ga. App.* 649 (65 S. E. 712) ; *Central of Georgia Ry. Co.* v. *Hunter,* 128 *Ga.* 600 (1) ; *Huey* v. *City of Atlanta,* supra. If there were defects in the drum or tank as alleged, they may be treated as defects of the premises, since this affected the safety of the premises within the range of danger from the explosion.

If I invite another upon my premises upon a matter of business of concern to myself, I am liable to him for such injuries as he may suffer by reason of any defects which, in the exercise of ordinary care, an inspection would have disclosed. If I do not know of the condition of my premises, I am still liable if I could have ascertained the same by a reasonable examination. It is my duty to exercise ordinary care to find out the condition,— to see what that condition is. If I do not know, how may I know unless I inspect? It is my duty to warn such one of defects of which I know and of which he does not know or could not have known in the exercise of ordinary care, but how may I warn him of defects

if I do not know of them myself? Of course I can not warn him of these specifically, but this does not relieve me of a liability for a failure to warn altogether. If I do not know the condition, and have not made an inspection thereof, but could have known by the exercise of ordinary care, then I am liable for a failure to warn, to the same extent as if I had known. If I do not know the condition and have not exercised ordinary care to find out, I should at least warn my invited guest to look out for himself. I should warn him of that possible danger in whatever I have not myself exercised ordinary care to examine.

In the case at bar, under the allegations as made, it can not properly be said as a matter of law that there was no duty to inspect and no duty to warn. The defendant owed to the plaintiff, of course, only the duty of exercising ordinary care for his safety. If this ordinary care required an inspection and warning, the defendant would be liable for a failure in these respects. These matters should be submitted to a jury, but can not be so submitted when they are stricken from the plaintiff's petition. We think they should not have been stricken.

It was stated by the Supreme Court of the United States in the case of Bennett *v.* Louisville & Nashville Railroad Co., 102. U. S. 577, wherein the plaintiff sought damages for injuries caused to her by defects in a wharf upon which she was impliedly invited, that it was "the plain duty of the company to take such precautions, from time to time, as ordinary care and prudence would suggest to be necessary for the safety of those who had occasion to use the premises for the purposes for which they had been appropriated by the company, and for which, with its knowledge and permission, it was commonly used by the public." But it is claimed that an inspection of this particular instrumentality, which was a "closed vessel," is shown by the allegations of the complaint to have been altogether impracticable, if not impossible. If the defendant did not know that it was in a safe condition for the purpose in hand, it was its duty, as above concluded, to find out, if it could do so in the exercise of ordinary care. If by the exercise of such diligence its condition could not have been found out, then the defendant should not, in ignorance thereof, under the case as pleaded, have dealt with the instrumentality in the manner alleged. If ordinary care requires an inspection, it requires that

inspection even if it may be difficult. The difficulty of the inspection does not determine the degree of care, but the degree of care may determine the extent of the inspection. In other words, to say that one should make an inspection, however difficult it may be, does not impose a higher degree of care than ordinary care, provided that to the extent of such care the inspection was required. If ordinary diligence demands an inspection, then the difficulty of making that inspection, however great, will not enlarge the degree of diligence which the law requires. Again, there may be other modes of inspecting an instrument such as this drum besides a visual examination; as a matter of law we can not say. An expert might determine its condition by sounding or in other ways which might suggest themselves. It can not be held as a matter of law that an inspection was so impracticable as that in ordinary diligence it could not have been done.

In the case of Richmond & Danville R. Co. v. Elliott, 149 U. S. 266 (2), which was an action for damage to an employee of another, lawfully upon the premises of the defendant, who was injured by reason of an explosion of a boiler alleged to have been defective, the court said: " The injury was caused by the explosion of a boiler of an engine, and it is insisted that the testimony shows that the engine was handled properly and carefully; that the defect in the iron casting of the dome ring, which, after the explosion was found to have existed, was a defect which could not with the exercise of reasonable care have been discovered by the company; and that it took all reasonable and proper care to test the boiler and engine, and from such test no defect was discovered. Hence the contention is that the court should have instructed the jury to find a verdict for the defendant. Perhaps, in view of what may be developed on a new trial, it is not well to comment on the testimony in respect to these matters. Whether there was negligence in respect to the accumulation of steam is a question of fact, involving, first, the capacity of the boiler, the amount of steam which had accumulated, and the precautions which were taken to prevent its going above a certain pressure. With regard to the defect in the iron casting, which seems to have been revealed by the explosion, it may be said that it is not necessarily the duty of a purchaser of machinery, whether simple or complicated, to tear it to pieces to see if there be not some latent defect. If he purchases

from a manufacturer of recognized standing, he is justified in assuming that in the manufacture proper care was taken, and that proper tests were made of the different parts of the machinery, and that as delivered to him it is in a fair and reasonable condition for use. We do not mean to say that it is never the duty of a purchaser to make tests or examinations of his own, or that he can always and wholly rely upon the assumption that the manufacturer has fully and sufficiently tested. It may be, and doubtless often is, his duty when placing the machine in actual use to subject it to ordinary tests for determining its strength and efficiency. Applying these rules, if the railroad company after purchasing this engine made such reasonable examination as was possible without tearing the machinery to pieces, and subjected it fully to all the ordinary tests which are applied for determining the efficiency and strength of completed engines, and such examination and tests had disclosed no defect, it can not in an action by one who is a stranger to the company be adjudged guilty of negligence because there was a latent defect, one which subsequently caused the destruction of the engine and injury to such party." That case originated in Fulton county, Georgia.

We think we can with stronger reason in the case at bar, wherein the vessel is alleged to have been old, worn, and long in use by the defendant, say, as did the Supreme Court, that we can not hold "that it is never the duty of a purchaser to make tests or examinations of his own, or that he can always and wholly rely upon the assumption that the manufacturer has fully and sufficiently tested. It may be, and doubtless often is, his duty when placing the machine in actual use to subject it to ordinary tests for determining its strength and efficiency." Of course, these rulings apply only to cases where the invitee is upon only those parts of the premises which are necessary for ingress and egress, or whose use is necessary or incidental to the mutual purpose or business of the invitation.

2. It is urged in the argument upon the general demurrers that the allegation in the plaintiff's petition, that the defendant knew or in the exercise of ordinary care should have known of the defective condition of the drum, fails to show any responsibility as for knowledge. While the plaintiff was not an employee of the defendant, yet the duty which the defendant owed to the plaintiff

in respect to the premises is quite analogous to that of the master to his servant in regard to furnishing the servant a safe place to work, and under which duty the master is liable for such defects in the place as he knew of, or of which he ought to have known in the exercise of ordinary care. In this class of cases it has been held that where facts are pleaded which disclose the relation from which such duty of the master arises, a general allegation that the master knew, or ought in the exercise of ordinary care to have known, of defects resulting in injury to the servant is not objectionable and is sufficient to charge a liability upon the master for such defects. *Cedartown Cotton &c. Co.* v. *Miles,* 2 *Ga. App.* 79 (1), 82 (58 S. E. 289); *Southern States Cement Co.* v. *Helms,* 2 *Ga. App.* 308 (58 S. E. 524). A different rule prevails, however, in that class of cases where such duty does not arise merely from the relation, that is to say where a duty arises only after knowledge, and where there is no duty to know. *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030 (6) (48 S. E. 438); *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (2) (70 S. E. 792); *Thomas* v. *Georgia Granite Co.,* 140 *Ga.* 459, 460 (79 S. E. 130); *Central of Georgia Ry. Co.* v. *Tapley,* 145 *Ga.* 792 (2) (89 S. E. 841). The *Babcock* case, just cited, was one of master and servant, but the plaintiff alleged that his injuries resulted from a defective beam with which he came in contact, but which was no part of the machinery and no part of the premises upon which he was called upon to perform his work, and that he was using the beam for an unintended purpose and outside of the scope of his duties. Therefore it was held in that case that the relation did not raise the duty on the master to know of its defective condition, and that the mere general allegation that the master knew or should have known of the defect was insufficient as a charge of notice. We think that the case now at bar comes within the class first mentioned, holding that where the facts show the relation from which the duty to know arises, a general averment that the defendant knew or ought to have known of the defects from which the injury resulted is sufficient to set forth a cause of action in this particular respect.

3. We are asked to apply in this case the rule announced in *Dartmouth Spinning Co.* v. *Achord,* 84 *Ga.* 14 (10 S. E. 449, 6 L. R. A. 190), to the effect that a repairer of machinery assumes

the risk of defects which he is called upon to repair or which are incident thereto, though concealed. We do not think the decision in that case is at all in the way of holding that under the allegations of plaintiff's petition he did not assume the risk of the alleged defects which resulted in his injury. His petition as amended discloses that they were in no way connected with those which he was called upon to repair, and by clear implication it is averred that the injury did not result from the defects he was sent to repair, nor from others incident thereto, nor from his faulty workmanship, but from an independent condition of which he was not informed. Of course, it would be another matter if his evidence at the trial should reveal such facts as would bring him within the rule of that case. · In this connection see *Huey* v. *City of Atlanta,* supra.

4-6. We think it is unnecessary to add anything to the statements contained in headnotes 4, 5, and 6.

7. Applying the foregoing principles to this case, the court erred in overruling the special demurrer to the second count, in which it was urged that no acts of negligence were sufficiently specified, but did not err in overruling any of the other demurrers either general or special. It was error, however, to sustain the defendant's other special demurrers.

It may again be noted that no questions which were raised by the demurrers were referred to by counsel for either side in their briefs except such as are dealt with in this opinion.

*Judgment reversed on both bills of exceptions. Stephens, J., concurs. · Jenkins, P. J., disqualified.*