### 23324. SMITH *v.* JEFFERSON HOTEL COMPANY INCORPORATED.

Decided February 24, 1934.

*Etheridge, Belser, Etheridge & Etheridge,* for plaintiff.
*Samuel L. Eplan, A. S. Grove,* for defendant.

Per Curiam. Mrs. C. H. Smith sued the Jefferson Hotel Company for damages on account of the alleged conduct of the servant and agent of the defendant toward her while she was a guest in the hotel. Both the plaintiff in error (the plaintiff in the court below) and the defendant in error, in their briefs, treated the petition as being based solely upon a breach of duty on the part of the defendant hotel company to the plaintiff as a guest, arising out of the relation of innkeeper and guest. The plaintiff's petition sets out substantially the following case (after stating jurisdiction of the court over the defendant corporation) : that the defendant is engaged in the business of operating a hotel where guests are entertained for a consideration; that petitioner is an elderly lady and has for many years been and is now engaged in the millinery business in the City of Atlanta; that her residence is outside the corporate limits of the city and is some distance from the car-line, and, because she keeps her shop open too late on Saturday night to go this distance, she has more than once spent Saturday night at the defendant's hotel, and was therefore known to the manager and clerks of the hotel;

that on the night of March 11, 1933, which was Saturday night, she closed her place of business about ten o'clock and went to the defendant's hotel, where she had previously been a guest under similar circumstances, and made application for a room and requested that she be given the same room that she had occupied a few weeks prior to said date; that while she was standing at the desk, the manager of the hotel informed her that there had been a telephone call for her, and, after securing the desired room, she seated herself in the lobby of the hotel to wait a repetition of the telephone call; that while thus seated and engrossed in the reading of a newspaper, she suddenly became aware that two men were standing immediately in front of her and very close to her; that, they being total strangers to her, she inquired what they wanted, and they replied that they had come to take her for a ride and asked her to come and go with them; that they insisted that they had come for her and that she must go with them, and, upon her protesting, they seized her and forcibly pulled her loose from her grasp on the sofa and undertook to carry her out of the hotel; that she struggled in the hotel to free herself from the men who had her in charge, and, although she called to the hotel clerk, who was in full view of all this occurrence, for protection, he failed to respond; that while she was being carried out of the hotel one of the men told her they were officers, and that they had been sent for her and were going to take her to police station, and, although she protested, and told them who she was and where she lived, they replied that they knew who she was and where she lived, but that they had been sent for her and that she must go with them, and that they forcibly and violently dragged her out of the hotel, and, although she sat down upon the sidewalk, they forcibly dragged her up and thrust her into an automobile and carried her to police headquarters; that she was kept in custody at the police station for sometime before being released, but was never offered any explanation as to why she had been arrested and held. "17. Petitioner shows that while she was seated in the lobby of the hotel as hereinbefore recited, the hotel clerk received information that a woman was wanted by the police, said woman being an entirely different woman, much younger than your petitioner, having no physical resemblance to your petitioner and having an entirely different name, and that the said hotel clerk informed the police authorities that the woman they

wanted was then at the hotel, and petitioner shows that the detective who arrested her went to the hotel upon information given by the hotel clerk, and that said hotel clerk pointed out your petitioner to the said officers and told them that she, petitioner, was the party they wanted. 18. Your petitioner shows that the hotel clerk well knew that your petitioner was not the party wanted by the police, or, by the exercise of even the slightest care and diligence, could have so ascertained, and that the detectives who came to the hotel did not know your petitioner nor did they know the identity of the woman whom they were seeking, and relied wholly upon the information given by the clerk as to the identity of the person whom they were seeking to place under arrest, and, as above stated, said hotel clerk pointed out your petitioner to the detectives and told them that she was the person they were seeking to arrest. 19. Your petitioner shows that while she had not actually signed her name on the hotel register, she was nevertheless, in legal contemplation, a guest of said hotel, having engaged a room and expressed her intention of occupying the same for the night, and, as such guest, the defendant owed to her the duty of protection against injury at the hands of third persons or at the hands of any one if within the power of said hotel, acting through its agent, the night clerk, to prevent the same. Your petitioner shows that it was within the power of the defendant, acting through and by its agent, to prevent the injury which she suffered, for the reason that the slightest explanation on the part of the hotel clerk to whom petitioner appealed would have prevented the injustice . . , whereas, instead of exercising such care in her behalf as hereinabove stated, the hotel clerk misled the detectives and caused them to perpetrate the injury upon your petitioner. . . " The petition then sets out the way in which petitioner was injured and prays judgment. The trial court sustained a general demurrer filed by the defendant and dismissed the petition. To this she excepted.

The court below did not err in sustaining the general demurrer to the petition. One conducting a hotel is not under a duty to prevent the arrest of a guest of the hotel by officers of the law who are seemingly acting within their authority. There is no duty on the part of a hotel company the violation of which will make it liable in damages because it has not investigated and determined for itself whether or not such an arrest, within the apparent scope of the officers' authority, is legal.

It is alleged that the clerk received information from the police that a woman was wanted, and that the clerk then informed the police authorities that the woman they wanted was then at the hotel, and that when they came the clerk pointed out the plaintiff as being the woman they wanted. It was further alleged that the clerk knew or should have known, by the exercise of the slightest care and diligence, that the plaintiff was not the woman wanted, and that the officers relied solely on the identification of the hotel clerk in making the arrest. It will be borne in mind that the hotel company was not interested in or concerned about the arrest of any woman on this occasion. The name of the woman wanted is not given, her size, age, and description are not given, except it is alleged that she had no physical resemblance to the plaintiff. It is not alleged that the clerk knew who was wanted, nor are any facts pleaded to show that he ought to have known that the plaintiff, as is alleged, was not the woman wanted by the police. There can be no question that if the hotel company or its agents in charge of its guests wilfully and wantonly made false statements to the police as to the identity of a guest and thus caused his or her arrest illegally, the hotel company would be liable. A bare allegation that the hotel clerk knew or should have known that such guest was not the person wanted by the police is insufficient to withstand a general demurrer. The demurrer sustained by the court was a general demurrer. No ruling appears to have been made on the special demurrer which pointed out particularly the defects in this general allegation.

In *Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (70 S. E. 792), it was said: "An allegation that the master knew, or ought to have known, that the plaintiff's fellow servants had substituted an improper and inadequate appliance for that furnished by the master charges constructive and not actual notice to the master. The sufficiency of the charge of imputed notice depends upon the pleaded allegations relied upon to show it; and when such facts are insufficient to raise such an inference, the allegation is insufficient as a charge that the master had notice that the plaintiff's fellow servants had substituted an improper appliance for that furnished by the master and thereby rendered unsafe the plaintiff's place of work." In *Babcock Lumber Co.* v. *Johnson,* 120 *Ga.* 1030 (48 S. E. 438), it was said: "Since pleadings are to be most strictly construed against the pleader, an allegation that the master knew or ought to

have known of the defects and dangers is equivalent to a charge of implied notice rather than of actual knowledge." A general demurrer was sustained in that case. Judge Powell in the case of *Pacetti* v. *Central of Ga. Ry. Co., 6 Ga. App.* 97 (64 S. E. 302), said: "It is true that when a petition, in alleging the element of the knowledge of the defendant or his agent, as one of the ingredients of the negligence complained of, leaves it doubtful whether the knowledge was actual or constructive, the petition as a whole must set up such a state of facts as prima facie will show a duty (arising from the relationship existing between the parties as asserted, or from the particular circumstances surrounding the transaction) that the defendant or his agent should have known. In other words, to state it differently, in that class of cases in which the duty of anticipation is normally absent, the plaintiff, in order to assert a valid cause of action, must state unequivocally that the defendant had actual knowledge, or else must set up such a state of facts and circumstances as would take the case out of the normal, and raise the duty where it otherwise would not exist." In *Fulton Ice Co.* v. *Pece, 29 Ga. App.* 507 (116 S. E. 57), it was said: "In this class of cases it has been held that where facts are pleaded which disclose the relation from which such duty of the master arises, a general allegation that the master knew, or ought in the exercise or ordinary care to have known, of defects resulting in injury to the servant is not objectionable and is sufficient to charge a liability upon the master for such defects. *Cedartown Cotton &c. Co.* v. *Miles, 2 Ga. App.* 79 (1), 82 (58 S. E. 289); *Southern States Cement Co.* v. *Helms, 2 Ga. App.* 308 (58 S. E. 524). A different rule prevails, however, in that class of cases where such duty does not arise merely from the relation, that is to say where a duty arises only after knowledge, and where there is no duty to know."

From the allegations in this case, there was no duty on the part of the defendant to interfere until it had knowledge that the plaintiff was not the woman wanted by the police. No facts are alleged on which to base the allegation that the clerk "well knew that your petitioner was not the party wanted by the police, or, by the exercise of even the slightest care and diligence, could have so ascertained." The petition was therefore subject to the general demurrer. As we have previously said, if the hotel clerk had been given information, and from such information knew, that the plaintiff

was not the person wanted by the police, and, after such knowledge, wilfully pointed out the plaintiff and thus caused her arrest, the hotel company, under the other allegations of the petition, would have been liable in damages. The court did not err in sustaining the general demurrer.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur, MacIntyre, J., dissents.*

MacINTYRE, J. I can not concur in the majority opinion. It may be stated that, as a general rule, "innkeepers are not insurers of the safety of the persons of their guests. The limit of their liaability is for the exercise of reasonable care for the safety, comfort, and entertainment of their visitors." Clancy *v.* Barker, 131 Fed. 161. If the officers merely asked the hotel clerk if a named woman was registered at the hotel and the clerk informed them that she was, and the officers thereupon came to the hotel and the clerk pointed out the plaintiff as the person inquired about, the defendant would not be liable for an assault by the officers in making an illegal arrest unless the defendant knew of the illegality, for he would be merely giving information to which the officers were entitled as a matter of public policy. The hotel clerk would not be bound to make an investigation to ascertain whether the persons whom he knew to be officers of the law had a warrant for the arrest of the guest, or to find out whether the charge on which they were proceeding was one for which an arrest could be legally made. Therefore, the hotel company would not be liable for an assault by the officers of the law in making an illegal arrest unless its clerk knew of the illegality or the facts and circumstances known to him are such as to apprise a person of ordinary prudence that the arrest was unlawful. 15 A. L. R. 885. To paraphrase the language of Chief Justice Simmons in *Brunswick & Western R. Co.* v. *Ponder,* 117 *Ga.* 63 (43 S. E. 430, 60 L. R. A. 713, 97 Am. St. R. 152), it would never do to allow a hotel clerk to interfere with the officers of the law and prevent arrests by them merely because he did not know whether or not they were acting within their power and authority. If the hotel clerk had knowledge that the arrest was unlawful, then it would be his duty to use ordinary diligence to prevent it and protect the guest, but even in that case the defendant would not be an insurer against such arrest. If the hotel clerk had notice that the arrest was wrongful, it would be his duty to make

inquiry into the matter. But where the arrest is by officers of the law and is apparently regular, and there is nothing to put the company on notice that the arrest is illegal, the company can not be held liable for failure to interfere with the officers and prevent the arrest. However, if the hotel clerk knew that petitioner was not the party wanted by the officers, and the officers who came to the hotel did not know the plaintiff or the identity of the person sought, and relied wholly upon the information of the clerk as to the person they were seeking to place under arrest, and the clerk, knowing that the plaintiff was not the person wanted, nevertheless pointed out the plaintiff to the officers and told them that she was the person they were seeking to arrest, and in making such arrest they assaulted the guest, it seems to us that the clerk was clearly not in the exercise of ordinary care for the protection of the guest, for however lawful the arrest of the person actually wanted by the officers might have been, to arrest the wrong person was of course an illegal arrest, and if the clerk knew such arrest was illegal by reason of the fact that he knew the officers had mistaken the identity of the guest, it was his duty to inform the officers of their mistake.

The allegations of the petition that "while petitioner was being carried out of the hotel one of the men told her they were officers, and that they had been sent for her and were going to take her to police station, and, although petitioner protested and told them who she was and where she lived, they replied that they knew who she was and where she lived, but that they had been sent for her and that she must go with them," would not naturally and logically contradict her other allegations in the petition to the effect that the clerk of the hotel pointed her out to the officers, well knowing that she was not the person the officers had asked about and that the woman wanted by the officers was an entirely different woman, much younger than petitioner, having no physical resemblance to petitioner and having an entirely different name, to such an extent as to show that the officers were not relying on the information of the hotel clerk in identifying the plaintiff. The identification by the hotel clerk might have been the very reason that the officers stated that they knew who she was. I think that while the allegations of the petition that the defendant knew that the arrest was made by the officers was illegal at the time it was made, or ought to have known that the plaintiff was not the party wanted by the officers, would add

nothing to the special facts alleged upon which this court is to determine on general demurrer (assuming those facts to be true) whether the clerk knew, or the facts and circumstances known to him were such as to apprise a person of ordinary prudence that the arrest was unlawful, that is, that the plaintiff was not the person wanted by the officers, yet we think the special facts set forth are sufficient to enable the petition to withstand a general demurrer; in short, we think the special facts pleaded are sufficient to support the conclusion that these facts amounted to such negligence as would authorize a recovery. "It is a fixed rule of jurisprudence that a general demurrer is insufficient to dismiss a cause of action if any portion of the petition affords good ground for recovery in behalf of the plaintiff." *Felton* v. *Highlands Hotel Co.*, 165 *Ga.* 598 (141 S. E. 793, 57 A. L. R. 987). From what has been said, I am of the opinion that the petition sets out a cause of action as against general demurrer and the court erred in sustaining the general demurrer.