### 30903. SMITH *v.* SWANN.

DECIDED NOVEMBER 3, 1945.

*Ezra E. Phillips,* for plaintiff.

*Brandon, Matthews, Long & Nall,* for defendant.

MacINTYRE, J. Mrs. M. D. Smith brought suit against J. T. Swann for damages for personal injuries. The defendant demurred generally to the petition, the judge sustained the demurrer, and dismissed the case. To this judgment the plaintiff excepted.

The material allegations of the petition necessary to a decision in this case are as follows: "Defendant maintains and operates a parking lot on the north side of Edgewood Avenue between Exchange Place and Ivy Street, opposite the Hurt Building, in the City of Atlanta; that the surface of said lot is of asphalt, stone, or concrete material, except for broken places therein; that said lot is approximately 100 feet wide and 200 feet deep; that said lot slopes from the back on the north and the west sides toward Edgewood Avenue, and the southeast corner of said lot; that at the point where petitioner was injured, as hereinafter alleged, approximately 20 feet from Edgewood Avenue and approximately 20 feet from the east side of said lot, said lot is approximately level except for a broken-in gully approximately 10 feet long, commencing approximately 12 feet from the Edgewood Avenue sidewalk and extending back north approximately 10 feet toward the back of said lot, and parallel with a metal-covered shed over a wash-rack area on the east side of said lot; that said gully is

approximately 18 inches in width at a point approximately 3 feet from the south end thereof next to the Edgewood Avenue sidewalk, and at said width is approximately 6 inches deep on the east side thereof; that the east border of said gully has a broken jagged concrete rim of irregular contour; that said gully slopes gradually from its 6-inch depth upward to the north end and west side, but at the south end the slope is not so gradual, and the east side of said gully has no slope. The east side of said gully is like the bank of a stream in that the descent from the surface level of the lot is abrupt and perpendicular, and at the deepest place some of the jagged edges of the bank extend out over the gully; that the gradual sloping surroundings, the depth, location, and formation of said gully are such that with the shadows and shades and varicolored areas of said lot at and about said gully, the scene is confusing to a casual user of said parking lot, and such as to cause persons without notice of a hole or gully to experience an unconscious feeling of security and freedom from danger from falling or stumbling into a hole, or being entrapped by a gully, or other dangerous condition. Said parking lot has tall buildings all around it, cutting off sunlight except during the middle of the day, and said gully is at a point dividing a new surface area of said lot from an older or patched portion, and extends along and just west of the apron to said wash-rack area, and has been partly filled in with soil of a color blending with the colors of said lot formed from motor oil, concrete, dirt, dust, water, rubber, clay, and such substances as are common to the average parking lot; that on or about the 30th day of October, 1944, petitioner was a customer of defendant, using said parking lot to park her automobile, by defendant's invitation, paying defendant a consideration for said privilege; that at or about 5:30 p. m. on said date petitioner and her husband went to said lot to get their car, and one of defendant's servants, agents, or employees brought petitioner's car from the back of said lot to the front west-exit drive into Edgewood Avenue and placed the same at a point approximately 3 feet west of said gully, so that as petitioner walked in an ordinary and regular manner around the back of her car from the apron of said wash-rack area—where she had been waiting for several minutes, without seeing the gully—she stepped her left foot over and on the jagged edge of said east

border or bank of said gully at or about the deepest point thereof in such a way that while her heel landed on one of said jagged crags, the remainder of said left foot was extended out over and into said gully, and this overbalanced petitioner, and said jagged edge under her left heel shelled off or said heel slipped on said crag as petitioner's weight came down on the forepart of her left foot, causing her to stumble and fall forward to her left side," resulting in certain described injuries.

■ The defendant relies upon the case of *Vaissiere* v. *J. B. Pound Hotel Co.*, 184 *Ga.* 72 (190 S. E. 354), in which it was said: "The allegations showed that the plaintiff was obliged to step up to get on the rostrum. Construing the petition most strongly against the plaintiff, and there being no allegation that the room was not properly lighted, it will be assumed that the open space between the rostrum and the wall was obvious. Being so, she was bound to know of danger of stepping off the edge of the rostrum when she stepped back to avoid striking her companion. In such circumstances her act in stepping on the edge of the rostrum and falling showed such want of ordinary care as would prevent a recovery. Code, § 105-603, as applied in *Ball* v. *Walsh*, 137 *Ga.* 350 (73 S. E. 585)." This case affirmed the decision of the Court of Appeals in the same case (*J. B. Pound Hotel Co.* v. *Vaissiere*, 54 *Ga. App.* 162) (187 S. E. 279). The *Vaissiere* case (184 *Ga.* 72) refers with approval to the dissenting opinion in *Wardlaw* v. *Executive Committee of the Baptist Convention*, 47 *Ga. App.* 595 (170 S. E. 830). These are cases where the question of visibility was not involved, and where the defect would have been plainly visible to the injured party and others, if they had looked where they were going, for they could easily and plainly have seen the defect. *Tinley* v. *Woolworth Co.*, 70 *Ga. App.* 390, 394 (28 S. E. 2d, 322). In short, the defects, if any, were obvious. In the instant case the defendant was an invitee, and "where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Code, § 105-401.

The gist of the cause of action here is that on account of an optical-illusion the defect was not visible under the facts alleged,

and hence not obvious. *Fuller* v. *Louis Steyerman & Sons Inc.,* 46 *Ga. App.* 830, 832 (169 S. E. 508). The petition in effect alleged that the defendant knew of the defect ("gully"), but nevertheless, while the plaintiff was waiting for the defendant to bring the automobile from another part of the parking lot to where she was waiting, the defendant brought it and so parked it that it was three feet on the opposite side of the gully from where she was waiting, and as she walked in an ordinary manner toward the car, in order to enter it, she did not see the "gully," but "stepped her left foot over and on the jagged edge of said east border or bank of said gully at or about the deepest point thereof in such a way that, while her heel landed on one of said jagged crags, the remainder of said left foot was extended out over and into said gully, and this overbalanced petitioner, and said jagged edge under her left heel shelled off or said heel slipped on said crag as petitioner's weight came down on the forepart of her left foot, causing her to stumble and fall forward and to her left side," resulting in certain described injuries.

The facts pleaded show that the plaintiff did not see the gully, not because she was not looking where she was going, but because the formation of the gully, with the shade and shadows of the varicolored areas of said parking lot at or about the said gully, was such as to present an unreal and misleading image to the vision, and gave to the part of the parking lot in question a deceptive appearance, so as to cause a person (the plaintiff in this case) walking across a part of the lot in question "in a regular and ordinary manner" at the time, place, and under the circumstances in question, while in the exercise of ordinary care, to believe that there was no gully, and thus cause the plaintiff to make a false step and fall and be injured as alleged. *Western & Atlantic Railroad* v. *Reed,* supra; *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 500 (5) (16 S. E. 49). In the instant case, where the allegations of the petition show no duty on the part of the plaintiff to know of the alleged defects, and where the acts of negligence of the defendant, relied upon, were stated in the petition, and it was further alleged that such negligence was the proximate cause of the injury, "it has not been held necessary in this State for the plaintiff to allege negatively that he did not cause the injury to himself by his own negligence, or why he could

not by the use of ordinary care have avoided the alleged injury. If it appeared affirmatively from the allegations that the plaintiff caused the injury by his own negligence, or could have avoided the consequences of the defendant's negligence by the use of ordinary care, and failed to do so, this would furnish ground for demurrer; but such is not the case here." *Lamb* v. *Hall*, 145 *Ga.* 331, 332 (89 S. E. 193); *King Hardware Co.* v. *Ennis,* 39 *Ga. App.* 355, 365 (147 S. E. 119). This court has many times held that questions as to diligence and negligence, including contributory negligence and what negligence constitutes the proximate cause of the injury complained of, are questions peculiarly for the jury and such as this court will decline to solve on demurrer, except in palpably plain and indisputable cases. Applying this rule to the instant petition, we can not say, as a matter of law, that no acts of negligence were set out against the defendant, or that the plaintiff was so negligent or lacking in ordinary care as to prevent a recovery. The petition as a whole, we think, set forth a cause of action against the defendant, and the judge erred in sustaining the general demurrer and dismissing the case.

There being a dissent in the division of this court to which this case was originally assigned, the case was considered and decided by the court as a whole pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L., 1945, p. 232).

*Judgment reversed. All the Judges concur, except Broyles, C. J., who dissents.*

BROYLES, C. J., dissenting. In my opinion this case is controlled by the decisions in *Vaissiere* v. *J. B. Pound Hotel Co.,* 184 *Ga.* 72 (supra), and in the same case in 54 *Ga. App.* 162 (supra). In that case a banquet was held in the dining room of the defendant's hotel, where a temporary rostrum had been constructed about 12 inches above the floor and extended to within $2\frac{1}{2}$ feet of the wall, thus leaving a vacant space. A table was placed on the rostrum, and seats were placed for guests at the table so that their backs would be towards and near the edge of the rostrum. When the dinner ended, two guests occupying adjacent seats arose, and one of them, being obliged to step back slightly in order to avoid colliding with the other, stepped on the edge of the rostrum, slipped and fell, and thereby sustained the injuries sued for. The petition further alleged that she had not

had occasion to examine the rostrum minutely and did not know that it did not extend all the way to the wall, nor did she see or know that she was seated near the edge of the rostrum. The defendant was alleged to have been negligent in the following particulars: (a) In failing to provide a reasonably safe place for the use of a guest at the banquet. (b) In failing to extend the rostrum all the way to the wall. (c) In failing to put a rope, banister, or other protection around the edge of the rostrum. (d) In failing to warn the plaintiff of her dangerous position in being seated with her back close to the edge of the rostrum. (e) In failing to warn her before she arose from the table of the danger of stepping on the edge of the rostrum. (f) In placing her chair so close to the edge of the rostrum that when she arose therefrom she naturally stepped upon the edge of the rostrum and fell. And the Supreme Court in that case in affirming the judgment of this court, held: "1. The allegations did not allege a case showing negligence of defendant. *Executive Committee of the Baptist Convention* v. *Wardlaw,* 180 *Ga.* 148 (178 S. E. 55), and dissenting opinion in *Wardlaw* v. *Executive Committee of the Baptist Convention,* 47 *Ga. App.* 595 (supra). . . The allegations showed that the plaintiff was obliged to step up to get on the rostrum. Construing the petition most strongly against the plaintiff, and there being no allegation that the room was not properly lighted, it will be assumed that the open space between the rostrum and the wall was obvious. Being so, she was bound to know of the danger of stepping off the edge of the rostrum when she stepped back to avoid striking her companion. In such circumstances her act in stepping on the edge of the rostrum and falling showed such want of ordinary care as would prevent a recovery. Code, § 105-603, as applied in *Ball* v. *Walsh,* 137 *Ga.* 350 (73 S. E. 585). . . The ruling of the Court of Appeals to the foregoing effect, upon which error was assigned, was not erroneous, as contended, on the ground that the facts did not show as matter of law that the plaintiff could have avoided the injury by exercise of ordinary care, but on the contrary that they entitled the petitioner to a hearing before the jury on the question."

The *Wardlaw* case, supra, was first passed on by this court (47 *Ga. App.* 595), and headnotes 1 and 2 of the majority opinion

read: "Where the owner or proprietor of premises, by invitation express or implied, induces others to come upon the premises for a lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe for such use. Taking as true the allegations of the plaintiff, who sought to recover damages for injury caused by falling down a step from a hallway into a room, the floor of which was below the level of the hallway, and which she alleged was 'a deceptive, hidden pitfall, not in plain vision of the plaintiff,' and not seen by her, the petition was not subject to general demurrer on the ground that no cause of action was set forth." To that ruling Judge Jenkins dissented and said: "While, as has been so often held as to be almost axiomatic in this State, questions of the plaintiff's and of the defendant's negligence, and of the proximate cause of an injury, are peculiarly for the jury, and are not to be determined on demurrer except in plain cases, the petition in this case, under the foregoing rule, according to my view, failed to state a cause of action, and the court properly sustained the defendant's general demurrer. 'Whatever may be the rule in other jurisdictions, it is the law of this State that the maxim res ipsa loquitur has no application to pleadings, and general averments of negligence can not be aided thereby; it is only a rule of evidence.' *Fulton Ice Co.* v. *Pece,* 29 *Ga. App.* 507 (6) (116 S. E. 57), and cit. Thus, the mere averment that the plaintiff fell would not aid the petition. There is no allegation that the place where the injury occurred was improperly lighted so that the 5-inch step would not have been plainly visible to the plaintiff or others who merely looked at the floor, . . that the plaintiff was suffering from bad eyesight or other infirmity known to the defendant." We realize that a dissenting opinion usually is immaterial and not subject to citation, but the above-quoted dissenting opinion was cited approvingly by the Supreme Court in the *Vaissiere* case, supra, and therefore is an exception to the general rule. The only case cited in the brief for the plaintiff in error is *Wynne* v. *Southern Bell &c. Co.,* 159 *Ga.* 623 (126 S. E. 388). That case was distinguished from the *Vaissiere* case by the Supreme Court holding in the latter case that "the facts of the case differ from those in the *Wynne* case, where the person was injured while descending a

stairway of a building, on account of an apparent structural defect in the steps, but which was not obvious to the person descending the steps." There is a similar difference between the facts of the *Wynne* case and those of this case.

The case of *Fuller* v. *Steyerman,* 46 *Ga. App.* 830 (supra), is also distinguished from this case by its facts. In that case, the petition for damages was based upon the alleged fact that in the building where the plaintiff was injured while descending a stairway therein, the stairway was improperly and defectively constructed. The petition alleged that "the balustrade [of the stairway] flares outward from the steps before it reaches the bottom step, and in this way causes the false mental impression to one descending the stairway that the bottom step is reached before it is actually reached and thus causes such person to make a false step and fall. . . The bottom step of the stairway is painted white and is 13 inches longer than the other steps, while the other steps are of a dark color, and this [bottom] step being made a different color causes the false mental impression to one descending the stairway that the floor has been reached before it has actually been reached, and thus causes such person to make a false step and fall." The petition further alleged that prior to her injury various people had fallen down the stairway, by reason of the above-quoted defects, in the presence of the defendant; that the defendant had ample opportunity to remedy such defects before her injury, but failed to do so, and failed to warn her of the defects or of the danger of descending the stairway. And this court, in reversing the judgment sustaining a general demurrer to the petition, said: "It will be entirely a question . . whether or not the steps on which the injury occurred, and which are alleged to be defective, presented the optical illusion to a person descending the same (the plaintiff in this case) that the bottom step had been reached before it was actually reached, and that a person descending such steps might, while in the exercise of ordinary care, believe that the last step had been reached before it was actually reached, thus causing such person to make a false step and fall." The facts pleaded in the instant petition are materially different from those in the *Fuller* case, supra, and the facts and allegations in the present petition present no question of an optical illusion to the plaintiff. The allegations, that "said parking lot

has tall buildings all around it, cutting off sunlight except during the middle of the day, and said gully is at a point dividing a new surface area of said lot from an older or patched portion, and extends along and just west of the apron to said wash-rack area, and has been partly filled in with soil of a color blending with colors of said lot formed from motor oil, concrete, dirt, dust, water, rubber, clay, and such substances *as are common to the average parking lot* (italics mine), when considered with the other facts and allegations set forth in the petition, fail to set out a cause of action. The petitioner shows that her injury occurred in the daytime, and that the defect in the parking lot was not a latent one, but was a patent one, and furthermore that it was not a small defect, discoverable only by a close inspection thereof, but was a gully 10 feet long, 18 inches wide, and 6 inches deep, and that when she was waiting for her car to be brought to her, she was standing within 3 feet of the gully. Furthermore, the petition, construed most strongly against the plaintiff, shows that the gully was not covered over or hidden by anything, but was in plain view of any person who merely looked at it, that there was no obstruction between her and the gully to prevent her from seeing it while she was waiting for her car, that her eyesight was normal, and that she was not afflicted with any other infirmity, that the defect in the parking lot was an obvious one, and that in the exercise of ordinary care she could have discovered it by merely looking at the ground 3 feet away from her, and thus could have prevented the infliction of the injury sued for. The allegation in the petition that the defendant's negligence was the proximate cause of such injury was a mere conclusion of the pleader unsupported by the facts set forth in the petition.

The sustaining of the general demurrer to the petition was not error.